PAUL C. SOUTHWICK (*Pro Hac Vice*)
    paulsouthwick@dwt.com
ARLEEN FERNANDEZ (State Bar No. 318205)
    arleenfernandez@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Plaintiffs
JOANNA MAXON and
NATHAN BRITTSAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA MAXON, AN INDIVIDUAL, and NATHAN BRITTSAN, AN INDIVIDUAL<br><br>                    Plaintiff,<br><br>        vs.<br><br>FULLER THEOLOGICAL SEMINARY, a California nonprofit corporation; MARIANNE MEYE THOMPSON, an individual; MARI L. CLEMENTS, an individual; NICOLE BOYMOOK, an individual;<br><br>                    Defendants. | Case No. 2:19-cv-09969-CBM-MRW<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 USC §§ 1681, ET SEQ.<br>2.  CALIFORNIA'S UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51-52 ET SEQ.<br>3.  BREACH OF CONTRACT<br>4.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>5.  FRAUDULENT MISREPRESENTATION<br>6.  EQUITY IN HIGHER EDUCATION ACT, CAL. EDUC. CODE §§ 66270, 66290.1, 66290.2<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, JOANNA MAXON, an individual  ("Joanna") and NATHAN

BRITTSAN, an individual ("Nathan") (collectively "Plaintiffs"), file this First

Amended Complaint against Defendant FULLER THEOLOGICAL SEMINARY

("Fuller"), Defendant MARIANNE MEYE THOMPSON ("Dean Thompson"),

Defendant MARI L. CLEMENTS ("Dean Clements"), Defendant NICOLE BOYMOOK ("Director Boymook") and allege as follows:

1.  This is a civil rights case about two students who were expelled from their graduate program for one reason: they married someone of the same sex.

2.  Joanna is a wife and mother who hoped to use her degree to become a better supervisor, to advance her career and to open up new opportunities for serving her community. Joanna financed her education through federal funding from the U.S. Department of Education. Now, after suddenly being expelled because of her same-sex marriage, Joanna has to repay those loans and to reassess her professional goals.

3.  Nathan is a husband, pastor and graduate student who hoped to use his degree to advance his career within his denomination. Nathan financed his education through federal funding from the U.S. Department of Education. After being expelled because of his same-sex marriage, Nathan's education was delayed by a year.

4.  Fuller, the institution that expelled them, while religious in nature, accepts federal funding, offers a variety of degree programs and does not require students to adhere to a statement of faith.

5.  Fuller has not applied for or received a religious exemption from the requirements of Title IX.

6.  Joanna is a Christian woman who took her studies seriously. She worked diligently on the courses in her program. Her peers and professors respected and admired her. She deserved more than a cold letter dismissing her "effective immediately."

7.  Being cast aside, by distant administrators, from a community she loved, and that had loved her back, hurt Joanna deeply and aggravated the rejection and trauma she has experienced as a woman and a sexual minority. As one of her former professor's has recognized, "This is wrong."

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

8. Nathan is a Christian man who entered Fuller to receive a quality education, advance his career and contribute to the discussion of important cultural issues. Faculty and others within the Fuller community affirmed him as a Christian man married to his husband and disagreed with Fuller's decision to expel him. Nathan deserved more than to be denied a fair disciplinary process and to be subjected to outright bullying and deception from several Fuller administrators.

9. Nathan was lied to, given the run-around, and rejected by some at Fuller, while also being quietly supported by others, who maintained silence to keep their jobs. These circumstances left Nathan feeling distraught and confused. Fuller kept him in a painful state of limbo for nearly six months.

## JURISDICTION AND VENUE

10. This action arises under Title IX, Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over Joanna and Nathan's state law claims pursuant to 28 U.S.C. § 1367 because their state law claims are related to their federal claims and form part of the same case and controversy.

12. This Court has personal jurisdiction over Fuller because Fuller is a California non-profit corporation whose principal offices are located in this District. This Court has personal jurisdiction over Dean Thompson, Dean Clements and Director Boymook because, on information and belief, Dean Thompson, Dean Clements and Director Boymook reside in this district.

13. Venue is proper in this district court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events giving rise to Joanna and Nathan's claims occurred in this district.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## PARTIES

14.     Joanna is a Texas resident currently residing in Fort Worth, Texas.

15.     Nathan is a California resident currently residing in San Jose, California.

16.     Defendant Fuller Theological Seminary ("Fuller") is a California nonprofit corporation, located at 135 North Oakland Avenue, Pasadena, California 91182.

17.     Defendant Marianne Meye Thompson is an individual residing in California and working at Fuller. At all times relevant to this complaint, Dean Thompson acted within the course and scope of her employment at Fuller.

18.     Defendant Mari L. Clements is an individual residing in California and working at Fuller. At all times relevant to this complaint, Dean Clements acted within the course and scope of her employment at Fuller.

19.     Defendant Nicole Boymook is an individual residing in California and working at Fuller. At all times relevant to this complaint, Director Boymook acted within the course and scope of her employment at Fuller

20.     Whenever and wherever reference is made in this Complaint to any act or failure to act by Defendants, such allegations and references shall also be deemed to mean the acts and failure to act of each Defendant acting individually, jointly, and severally.

## FACTUAL ALLEGATIONS

### A.     Joanna Enrolls at Fuller.

21.     Joanna enrolled at Fuller in 2015 through the school of theology. She was primarily enrolled in courses online. She also attended some courses at Fuller's regional campus in Houston, Texas.

//

//

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

22.     At the time of her application, Joanna was married to her husband. After her admission was approved and she had a start date, she and her husband separated.

23.     She called the school and asked to move her start date of studies. This was granted and she disclosed her divorce to Fuller along with changing her last name.

24.     Joanna's divorce was finalized prior to her start date. Her first class had her old last name and she worked through having her name and email address for the school changed during that first quarter.

25.     Joanna began dating a woman and discussed her same-sex relationship with students and professors at Fuller. Students and professors were supportive of her and her family.

26.     In 2016, after the legalization of same-sex marriage, Joanna married her wife. They filed a joint tax return and Joanna authorized the IRS to share her tax return with Fuller for purposes of financial aid.

27.     Joanna is also a mother.

28.     Joanna discussed her same-sex marriage and family with students and professors at Fuller. They continued to be supportive and affirming of her and her family.

29.     Over the next three years, Joanna maintained a strong GPA at Fuller and nearly completed her Master of Arts in Theology ("MAT") degree. She started her time at Fuller as a Masters of Arts in Theology and Ministry ("MATM") student and changed her degree to MAT, which is a more academic degree and would have allowed her to pursue a Ph.D. at some point, which is fitting as she had not discerned a call to vocational ministry in her time at Fuller.

30.     Students who enroll in the MAT degree program pursue the degree to enhance their leadership skills for use in a variety of professions, including ministry, business, nonprofit work, and the arts.

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.      Nathan Enrolls at Fuller**

31.      Nathan applied to Fuller on August 11, 2017. The name on his application and online profile at Fuller was Nathan Brittsan.

32.      Nathan received notice of his acceptance to Fuller on August 28, 2017.

33.      Nathan paid the non-refundable matriculation/enrollment fee on August 29, 2017.

34.      Nathan accepted his approved financial aid awards and registered for four classes at Fuller.

35.      Fuller received the distributed federal student loan funds to pay Nathan's tuition bill.

36.      Fuller granted Nathan's federally-mandated student health insurance waiver by acknowledging Nathan's husband's insurance policy coverage.

37.      In his application to Fuller, Nathan informed Fuller that he attended a church whose denomination permits its congregations to ordain ministers who are in same-sex marriages and to officiate same-sex weddings.

38.      Nathan was married by his Senior Pastor, with the full support of his congregation, in 2016.

39.      Nathan informed Fuller that his church was focused on social justice with an emphasis on homeless ministry and issues of class, race and equality.

40.      Nathan told Fuller that he was applying to Fuller's Masters of Divinity program because his denomination requires such a degree prior to ordination.

41.      Nathan attended classes online and at Fuller's campus in the Bay Area.

**C.      Fuller Theological Seminary**

42.      Fuller's main campus is located on 13 acres in the Playhouse District of Pasadena. Its campus includes 29 buildings with nearly 300,000 square feet of office, administrative, and educational space and 267 residential units.

43.      As noted above, Fuller also offers educational degree programs online and at several regional campuses across the country, including the Bay Area, where

Davis Wright Tremaine LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Nathan attended, and Houston, Texas, where Joanna attended. The majority of students do not attend class at Fuller's main campus.

44.     Fuller's administration is based in Pasadena, California and the administrators responsible for expelling Joanna and Nathan worked in Fuller's Pasadena office.

45.     Fuller offers degrees in psychology, intercultural studies and theology.

46.     Fuller admits students from a variety of faith traditions.

47.     Students attending Fuller come from more than one hundred denominations.

48.     Fuller admits students from faith traditions and churches that affirm same-sex marriages.

49.     Fuller hires faculty and administrators from faith traditions and churches that affirm same-sex marriages.

50.     Fuller admits students from faith traditions that ordain lesbian, gay and bisexual ministers who are in same-sex marriages.

51.     Fuller hires faculty and administrators from faith traditions that ordain lesbian, gay and bisexual ministers who are in same-sex marriages.

52.     Fuller does not prohibit students from officiating same-sex weddings.

53.     Fuller does not prohibit faculty or administrators from officiating same-sex weddings.

54.     Fuller does not prohibit students from attending same-sex weddings.

55.     Fuller does not prohibit faculty and administrators from attending same-sex weddings.

56.     Fuller does not require students to adhere to a statement of faith.

57.     Fuller admits students who are sexual or gender minorities (LGBTQIA+).

58.     Fuller does not prohibit same-sex dating relationships among its students.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

59.     Fuller's written policies do not prohibit its students from entering into same-sex marriages.

60.     Fuller is an independent institution.

61.     Fuller is not affiliated with a denomination or church.

62.     Fuller is not a subsidiary of a parent corporation.

63.     Fuller's board of trustees is not appointed by a denomination, church or external organization.

64.     The members of Fuller's board of trustees are not required to belong to a particular denomination or church.

65.     As an accredited educational institution, Fuller's primary purpose is to provide educational courses and to grant certificates, diplomas and degrees in recognition of student completion of graduation requirements.

66.     Fuller charges students tuition for its educational services.

67.     Fuller competes in the marketplace against other private and public colleges and universities to attract students, faculty, and administrators.

68.     Fuller competes in the marketplace to attract revenues from students who finance their education through federal student loans.

69.     Fuller is the largest recipient of federal funding of any seminary in the United States, having received more than $77,000,000 in federal funding between fiscal years 2015-2018.

70.     Students attend Fuller, at least in part, to further their economic opportunities.

71.     A Fuller degree confers an economic benefit on students.

72.     Fuller is accredited by the secular Western Association of Schools and Colleges' (WASC) Senior College and University Commission.

73.     Joanna funded her education at Fuller through student loans from the U.S. Department of Education.

          //

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

74.     Nathan funded his education at Fuller through student loans from the U.S. Department of Education.

75.     On information and belief, the majority of Fuller's revenues come from student loans funded by the U.S. Department of Education.

**D.     Fuller Expels Nathan**

76.     On September 21, 2017, Mari L. Clements, Dean of the School of Psychology, sent Nathan a Letter of Dismissal from Fuller Theological Seminary.

77.     Dean Clements' letter was sent two business days before Nathan's classes started for the quarter. Nathan received the letter on September 25, 2017.

78.     Dean Clements' letter stated that the Office of the Deans of Fuller Theological Seminary decided to dismiss Nathan from enrollment on the basis of a violation of the Sexual Standards component of Fuller's Community Standards.

79.     Dean Clements informed Nathan that Fuller had received Nathan's request to change his name from "Henning" to "Brittsan" in Fuller's student files. Apparently, in the course of this process, Fuller learned that Nathan requested the name change due to his marriage to a same-sex partner.

80.     Dean Clements did not inform Nathan how knowledge of his same-sex marriage made its way to Fuller's Department of Admissions. Rather, Dean Clements informed Nathan that the Department "was made aware" and determined that the situation was a student-conduct matter.

81.     Dean Clements did not engaged Nathan leading up to her decision, either through a meeting, phone conversation or correspondence.

82.     Fuller never asked Nathan whether he was engaged in "homosexual forms of explicit sexual conduct."

83.     Fuller never asked Nathan whether he would commit to refraining from "homosexual forms of explicit sexual conduct" while a student at Fuller.

84.     Rather, Dean Clements merely decided, without explanation, that because of Nathan's perceived nonconformance to Fuller's Community Standards,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and because the nature of his perceived nonconformance could not readily be changed, dismissal was proper in his circumstances.

85.     To appeal her decision, Dean Clements directed Nathan to contact Nicole Boymook, Fuller's Executive Director of the Office of Student Concerns.

86.     Dean Clements informed Nathan that his appeal would be directed to Fuller's Provost.

87.     Shortly before his dismissal on September 21, 2017, Director of Admissions Max Wedel and Professor Kurt Frederickson had spoken with Nathan regarding his perceived Community Standards violation.

88.     Nathan was not informed that this discussion was actually part of an initial inquiry or investigation by Fuller into Nathan's perceived Community Standards violation.

89.     Dean Wedel and Professor Frederickson urged Nathan to withdraw his application to Fuller with implied threats of blemishes on Nathan's academic record if he refused to withdraw his application.

90.     Nathan declined to withdraw his application.

91.     To clarify what was happening to him, Nathan asked Dean Wedel if his application for admission to Fuller had now been reversed or denied or if he would be entitled to a dismissal process as an enrolled student.

92.     Dean Wedel informed Nathan that his application had not been denied and that since he was an enrolled student, he would hear from the School of Theology Dean's Office about the next steps.

93.     However, rather than hearing from someone within the School of Theology, as Dean Wedel and Professor Frederickson had informed him, Nathan received the September 21, 2017, letter of dismissal from Dean Clement of the School of Psychology.

94.     Fuller denied Nathan Phase 2 of the Complaint Resolution Process, the Investigation and Recommendations phase.

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

95.     The Investigation and Recommendations phase is a three to five week process that involves the formation of an investigative team, interviews with the parties involved and witnesses, and a written report that includes details of the investigation and recommendations.

96.     Fuller denied Nathan Phase 3 of the Complaint Resolution Process, the Parties Review Report with Option to Respond phase.

97.     Phase 3 is a seven day process in which the parties review the report and are provided an option to respond to the report and have the response included with the report before it is sent to the decision-maker.

98.     On September 25, 2017, Nathan wrote to Director Boymook informing her that he had just received a dismissal letter from Fuller and that he was distraught. He asked her how to appeal the decision and whether to attend classes while he was appealing it.

99.      On September 26, 2017, Director Boymook wrote to Nathan that she was working on an answer for him. She did not tell Nathan to refrain from attending classes.

100.    As Nathan did not receive an answer from her on September 26, he attended class that evening.

101.    On September 27, 2017, Director Boymook informed Nathan that she had still not heard officially regarding Nathan's appeal process and that, in the meantime, Nathan could work on his appeal letter. She did not know who the appeal letter should be directed to at that time. She later informed Nathan that he should send his appeal letter to Acting Dean of the School of Intercultural Studies, Bryant L. Myers.

102.    Nathan immediately drafted his appeal letter and sent it to Dean Myers on September 28, 2017.

//

//

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

103.   In his appeal, Nathan informed Dean Myers that he had already attended classes, purchased books, done readings, posted online and invested hours in his studies.

104.   He informed Dean Myers that he had declined an offer of admission to Graduate Theological Union seminary that included a generous scholarship and that dismissal from Fuller would set him back a year in his educational goals and would treat him unfairly.

105.   Nathan requested that, at the very least, Fuller allow him to complete his current quarter on probationary status so that he could transfer his credits to another seminary.

106.   Nathan informed Fuller that he would comply with whatever reasonable conditions Fuller might require to allow him to complete the current quarter.

107.   Nathan also stated that his understanding was that Title IX's prohibition on sex discrimination applied to his situation and that he believed there was a legal and moral imperative for Fuller to allow him to remain a student.

108.   In response, on October 2, 2017, Acting Dean of the School of Intercultural Studies Bryant L. Myers told Nathan that "While I appreciate the tone of your appeal and your willingness to try to find a way forward for a quarter, the nature of the issue being appealed makes this problematic."

109.   Dean Myers went on to state that, as an acting dean, he had signed Fuller's Community Standards himself and thus had no option other than to support Dean Clements' decision, and must affirm Nathan's dismissal from enrollment at Fuller.

110.   Dean Myers went on to say that Fuller had dropped Nathan from classes.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

111.   Dean Myers also told Nathan that he was not considered a matriculated student and that "[o]nly matriculated students could take classes while an appeal is heard."

112.   Dean Myer's statement was inaccurate, as Nathan was a fully matriculated student, whose student account was paid and current through the first two days of the quarter.

113.   Moreover, Dean Wedel had informed Nathan on September 20, 2017, that Nathan's application had not been denied and that since Nathan was now a matriculated student, any further steps or follow-up would be communicated through Fuller's School of Theology Dean's Office.

114.   Fuller's Registrar also later confirmed to Nathan that he matriculated as a student at Fuller on September 19, 2017.

115.   In line with his status as an enrolled student whose student account was paid and current, Nathan attended classes during the first two days of the quarter on September 25 and 26, 2017.

116.   Nathan was on campus waiting for his classes to start on the third day of the quarter when Director Boymook informed Nathan that he could no longer attend classes and provided him information on how to appeal his dismissal from Fuller.

117.   Fuller inaccurately told Nathan that since he was not a matriculated student, he would need to wait on the decision of his appeal before he could resume attending classes.

118.   Fuller backdated his student account at or around this time so that it no longer showed his account as paid and current but now showed his account as having a refund of his enrollment fee as of September 8, 2017.

119.   In his October 2, 2017 letter affirming Dean Clements' dismissal of Nathan, Dean Myers did not present Nathan with the opportunity to appeal his decision or direct him to any processes for appeal.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

120.    Fuller partially denied Nathan Phase 7 of the Complaint Resolution Process, the Appeal Decision phase.

121.    The Appeal Decision phase is a two week process that Fuller purported to have completed in two business days.

122.    Moreover, Fuller did not address the procedural inadequacies in the Complaint Resolution Process leading up to his appeal.

123.    Fuller rushed what was supposed to be an approximately twelve-week Complaint Resolution process, purporting to have completed it in less than two weeks.

124.    Given that Dean Clements was from the School of Psychology and that Dean Myers was from the School of Intercultural Studies, Nathan had still not received communications from anyone at the School of Theology or from Fuller's Provost.

125.    Nathan continued to press Fuller for a response from the School of Theology to his attempted appeals of his dismissal from the School of Theology.

126.    On October 10 and 11, 2017, Nathan provided information regarding his enrollment and dismissal to Executive Director Boymook.

127.    During this time, Nathan informed Director Boymook that Fuller faculty members were willing to support him in his appeal and that he would like them to be able to contact the School of Theology as soon as possible.

128.    Director Boymook did not respond to his request.

129.    In a letter dated October 13, 2017, Marianne Meye Thompson, Acting Dean of the School of Theology, wrote to Nathan regarding his dismissal from Fuller.

130.    Dean Thompson wrote: "At the outset, I would like to apologize if there was any miscommunication of Fuller's Community Standards to you by any Fuller employees. Institutionally, Fuller remains committed to its Community Standards[.]"

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

131. Dean Thompson then accused Nathan of a Sexual Standards violation, as well as a new violation of Fuller's Standards for Respect for People and Property.

132. After making these accusations, Dean Thompson proceeded to bully Nathan into refraining from appealing any further within Fuller's appeals process, telling Nathan that "Fuller's actions here are categorically defensible, and that your pursuit of administrative or judicial relief would be flatly unavailing."

133. Dean Thompson continued to describe a further appeal as futile as the body considering a further appeal "would not second-guess earlier decisions" and was "the very body that implemented the Community Standards."

134. Dean Thompson ended her letter by telling Nathan that, "If, *notwithstanding all of this additional context*, you still wish to pursue further appeal, please connect with Nicole Boymook for guidance in doing so."

135. Despite Dean Thompson's letter, which does not appear to have been part of Fuller's formal process but was an *ad hoc* attempt to scare Nathan into ending his appeal process, Nathan persisted.

136. On October 16, 2017, Nathan asked for further support for his appeal from the faculty of Fuller.

137. Up to this point during his disciplinary process, Nathan was told by at least three faculty and administrators from Fuller that they were personally LGBTQ affirming but that they could not publicly say so.

138. In response to his request for faculty support, at least two additional faculty members expressed their support for Nathan.

139. One faculty member informed him that she had personally married gay and lesbian friends and that she would have welcomed Nathan in any of her classes at Fuller.

140. Another faculty member expressed her support for Nathan. She further informed him that Fuller had previously operated under unwritten policies regarding

homosexuality and that Fuller's current policies did not account for, and created confusion around, students who were in legal same-sex marriages.

141.   On October 17, 2017, Nathan requested that Director Boymook provide him with records related to his dismissal so that he could appeal to the Board of Directors.

142.   Nathan stated that he had not received a response from the Registrar regarding his request for documents about his dismissal.  He specifically noted that "I am most interested in the Community Standards Complaint Form that should have been filed to begin my dismissal procedure.  I am certain that someone within Fuller violated my privacy rights, based on the way things unfolded.  I want to see all the forms, files, and correspondence regarding my dismissal."

143.   On October 18, 2017, Director Boymook responded by refusing to comply with Nathan's request for records relating to his disciplinary process. She informed Nathan that the Board of Trustees would be his next available option if he wanted to appeal and that she would provide him with contact information for the appropriate person to receive his appeal.

144.   Dean Thompson and Director Boymook did not provide a deadline for Nathan to make his appeal.

145.   On October 18, 2017, Nathan asked Executive Director Boymook about the official process for filing a Title IX complaint against Fuller.  Nathan also asked her whether Fuller had a Title IX religious exemption on file with the Department of Education.

146.   Director Boymook did not respond to Nathan's questions.

147.   Director Boymook held a dual role as head of the Office of Student Concerns, where she investigated and processed complaints by the institution *against students*, and also the Title IX & Discrimination Officer for Students, where she was supposed to investigate complaints of discrimination brought by students *against the institution*.

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

148.   Director Boymook's dual roles placed her in a conflict of interest position in which she chose to fulfill her obligations to Fuller at the expense of her obligations to Nathan under Title IX and the University's policies against discrimination.

149.   Fuller's Title IX officer was effectively weaponized against Nathan, preventing him from asserting a Title IX complaint for sex and sexual orientation discrimination.

150.   On October 18, Nathan also informed Director Boymook that he would need his disciplinary process documents from the registrar before he would be able to finish his appeal to the Board of Trustees. He requested that she inform all necessary parties of the interdependent timeframes.

151.   Fuller refused to provide him with the requested documents.

152.   On January 10, 2018, Nathan informed Fuller that it had yet to send him the requested documents, including the Community Standards Complaint Form(s) used to initiate his dismissal, or equivalent document(s), which Fuller's registrar had informed Nathan had existed, and which Nathan had specifically requested.

153.   On January 17, 2018, Fuller responded that it would not be sending any further documents in connection with Nathan's request.

154.   On January 17, 2018, Nathan filed a complaint with the U.S. Department of Education, Office of Civil Rights, relating to Fuller's refusal to provide him with the records related to his disciplinary proceeding, including the Community Standards Complaint Form(s) that Fuller acknowledged were used to initiate his dismissal.

155.   On or before February 2, 2018, the U.S. Department of Education, Office of Civil Rights, informed Nathan that Fuller's response to Nathan's records request was inadequate.

//

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

156.   On February 2, 2018, Nathan made a final request to Fuller for access to his student records regarding his dismissal so that he could make his appeal to the Board of Trustees.

157.   Fuller never provided Nathan with the Community Standards Complaint form containing the original allegations against him or the Complaint Resolution Report.

158.   On February 2, 2018, Nathan also wrote to the Fuller student council for support for his appeal to the Board of Trustees, informing them that Fuller had failed to honor its appeal process and was refusing him access to basic documents concerning his dismissal that he needed for his appeal.

159.   Nathan's appeal process at Fuller remained open through February or March 2018.

160.   Ultimately, Nathan surrendered to Fuller's bullying, obstruction and delay tactics and did not appeal to the Board of Trustees.

**E.     Fuller Expels Joanna.**

161.   On August 29, 2018, Director Boymook, a mere six months after her last communications with Nathan, submitted a Complaint Resolution Report relating to a complaint form submitted against Joanna by the Office of Student Financial Service ("OSFS"). See Exhibit 1.

162.   The complaint form submitted by OSFS appears to have alleged that Joanna violated "Community Standard: Sexual Standards." OSC did not provide a copy of the complaint form to Joanna. According to the Complaint Resolution Report, the basis for OSFS's complaint was twofold: (1) that OSFS received a copy of Joanna's 2016 income tax returns indicating that Joanna was married to another female and (2) Joanna's acknowledgment of her marriage during an August 28, 2018 telephone conversation that was apparently part of an investigation conducted by Director Boymook.

//

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

163.   During this purported investigation, Director Boymook did not ask Joanna if she had engaged in "homosexual forms of explicit sexual conduct," which is what Fuller's Community Standard: Sexual Standard prohibits. Fuller's Community Standard: Sexual Standard does not prohibit same-sex dating relationships or same-sex civil marriages.

164.   Fuller denied Joanna the "loving verbal confrontation" phase of Fuller's Complaint Resolution Process, which is to precede formal action by Fuller.

165.   As with Nathan's circumstances, Director Boymook's dual roles of investigating Fuller's complaint against Joanna and being responsible for investigating discrimination by Fuller against Joanna, placed Director Boymook in a conflict of interest position in which she chose to fulfill her obligations to Fuller at the expense of her obligations to Joanna under Title IX and the University's policies against discrimination. In response to a question from Joanna as to whether Fuller had encountered a situation similar to her situation, involving a student being disciplined for their same-sex marriage, Director Boymook lied to Joanna and denied that Fuller had encountered a similar situation.

166.   Fuller's Title IX officer was effectively weaponized against Joanna, preventing her from asserting a Title IX complaint for sex and sexual orientation discrimination.

167.   After the call with Director Boymook, Joanna reached out to a Fuller professor and administrator for advice. In response, that professor and administrator affirmed their support for Joanna, telling her, "You are enough…Joanna I am for you[.]"

168.   Three weeks later, on September 20, 2018, which was only one business day before classes for the fall quarter began, Director Boymook provided Joanna with a copy of the Complaint Resolution Report.  Director Boymook stated that Joanna could respond in writing as to whether or not she accepted the findings in the report. Director Boymook emphasized that "**this is your *only* opportunity to**

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  **provide direct input for consideration by the Dean.**" (bold and italics in the

2  original). Director Boymook directed Joanna to provide her written response to

3  Dean Thompson by September 30, 2018.

4       169.   Fuller did not interview Joanna's wife, children or other witnesses, in

5  violation of the Investigation and Recommendations phase of Fuller's Complaint

6  Resolution Process.

7       170.   The Complaint Resolution Report did not contain any

8  recommendations for action by Fuller, in violation of the Investigation and

9  Recommendations phase of Fuller's Complaint Resolution Process.

10       171.   On September 30, 2018, Joanna wrote to Dean Thompson. She stated

11  that she wished "that this wasn't a letter but a conversation we could have had over

12  coffee." She explained that she entered Fuller in the Spring of 2015, more than three

13  years before the date of her letter to Dean Thompson.

14       172.   Joanna went on to disclose to Dean Thompson that she had made "a

15  financial, emotional, and legal commitment to the person I love."

16       173.   Joanna did not describe any sexual commitment or "homosexual forms

17  of explicit sexual conduct" in her letter.

18       174.   Joanna then went on to explain how she now recognizes that Fuller led

19  her into feeling a "false sense of safety" at Fuller because Fuller welcomes diversity

20  and differences of opinion and because she had discussed her same-sex partner and

21  same-sex marriage in class with professors and students on multiple occasions

22  without opposition or reprimand.

23       175.   Joanna asked Dean Thompson to allow her to finish her degree at

24  Fuller, as she had been there over three years and only had a few classes remaining.

25       176.   On October 9, 2018, several weeks into one of Joanna's final quarters

26  at Fuller, Dean Thompson sent Joanna a letter informing her that she was

27  dismissing her from Fuller, effective immediately.

28       //

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

177.   Dean Thompson concluded that Joanna's same-sex marriage put her in violation of Fuller's Community Standard: Sexual Standard.

178.   However, the Sexual Standard does not prohibit a same-sex civil marriage.

179.   Moreover, Fuller had not obtained, or presented, evidence that Joanna had engaged in "homosexual forms of explicit sexual conduct."

180.   Rather, Fuller based its decision, at all stages of the process, on Joanna's same-sex marriage, which was not, in and of itself, a violation of Fuller's Community Standard: Sexual Standard.

181.   Dean Thompson then stated that "I am instructing the Registrar to dismiss you from the seminary, effective immediately."

182.   Dean Thompson provided no discussion as to why she selected the severe punishment of expulsion for Joanna.

183.   Fuller could have applied many other options for discipline and reconciliation.

184.   Dean Thompson either did not consider, or dismissed, the impact that her decision would have on Joanna's child, her family's finances and her professional future.

185.   Fuller, through its faculty, administrators and other students, knew all of these things about Joanna and, for three and a half years, welcomed her into its community.

186.   Shortly after her dismissal, Joanna wrote to a professor that "[B]efore I received notification of my dismissal from the dean this past week, no one at Fuller who has heard or knows this piece of my story (students or professors) has sought to exclude me from the seminary. In fact, the opposite has been true."

187.   Sadly, although she had been living transparently and had been affirmed by her community, Joanna was suddenly treated by Fuller's administration as if she were a threat and a social pariah.

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

188.    Joanna's community, where she found so much love, inspiration and acceptance, had suddenly cast her out.

189.    As the professor who Joanna had confided in wrote: "This is wrong."

**F.    Fuller's Policies**

190.    Fuller's Non-Discrimination Policy states: "Fuller Theological Seminary is committed to providing and modeling a learning, working, living, and community environment that is free of unlawful discrimination in all of its policies, practices, procedures, and programs. This commitment extends to the seminary's administration of its educational policies, admissions, employment, educational programs, and activities. In keeping with this commitment, the seminary does not discriminate on the basis of race, color, national origin, ancestry, sex, sexual orientation, marital status, military and veteran status, medical condition, physical disability, mental disability, genetic characteristics, citizenship, gender, gender identity, gender expression, pregnancy, or age."

191.    Fuller's Policy Against Unlawful Discrimination states: "Fuller Theological Seminary also does not discriminate on the basis of sexual orientation. The seminary does lawfully discriminate on the basis of sexual conduct that violates its biblically based Community Standard Statement on Sexual Standards.  The seminary believes that sexual union must be reserved for marriage, which is the covenant union between one man and one woman.  The seminary believes premarital, extramarital, and homosexual forms of explicit sexual conduct to be inconsistent with the teaching of Scripture.  Therefore, the seminary expects members of its community to abstain from what it holds to be unbiblical sexual practices."

192.    Fuller's Title IX Policy states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance. Title IX of the Education Amendments of 1972[.] Title

IX of the Education Amendments of 1972 (Title IX) prohibits discrimination based on gender in educational programs that receive federal financial assistance. Programs and activities that may be included are admissions, recruitment, financial aid, academic programs, athletics, housing, and employment. Title IX also protects men and women from unlawful sexual harassment in school programs and activities."

193.   Fuller's Community Standards state: "The use of seminary disciplinary procedures should always be viewed as a last resort. In no way do they exempt the seminary from making every possible effort to guide the honest pursuit of truth, to encourage wholesome approaches to sexuality, to support stable family life, or to model community relationships that convey respect for people and property."

194.   Fuller's Complaint Resolutions Procedures state: "Upon receipt of a completed 'Community Standards Complaint Form,' the complaint resolution officer or his/her designee will determine the appropriate next steps for investigation and resolution of the complaint on a case-by-case basis….The complaint resolution officer or his/her designee also may constitute a committee to assist in the investigation, seek the assistance of outside/off-campus professionals, and/or do whatever he/she deems appropriate to ensure that a complete and fair investigation is conducted. If during the course of an investigation, additional possible violation(s) of a community standard or other seminary policy are noted, the investigation will be expanded to include such possible violation(s). Both parties will be notified of the expanded investigation."

195.   Fuller's Complaint Resolutions Procedures further state: "The totality of the circumstances, including the context in which the alleged conduct occurred, will be considered. If the concern is not otherwise resolved, upon completion of an investigation the complaint resolution officer or his/her designee will provide a copy of the findings of the investigation and the recommendation(s) for action or non-action by the seminary to the individual who submitted the complaint….Each

individual or organization will then have an opportunity to timely respond in writing to the complaint resolution officer or his/her designee as to whether or not he/she/it accepts the findings and recommendation(s) and why or why not. Any individual/organizational responses, along with the findings of the investigation and the recommendation(s) of the complaint resolution officer or his/her designee, will be submitted to one of the following decision-makers: 1. the appropriate dean of a specific school or his/her designee, if the complaint concerns the conduct of a student or faculty member[.]"

196.   Fuller's Complaint Resolutions Procedures further state: "A decision will be made: 1) after reviewing the findings of the investigation and the recommendation(s) of the complaint resolution officer or his/her designee, 2) after reviewing the individual responses, if any, and 3) if deemed helpful, after consulting with the complaint resolution officer or his/her designee and/or the co-investigator, if applicable. A letter of decision will be provided to the individual who made the complaint…Upon a determination that a violation of a seminary community standard has been shown by a preponderance of the evidence/facts, appropriate disciplinary action will be imposed. The applicable decision-maker as identified above may impose disciplinary action and/or take such further steps as necessary to facilitate imposition of disciplinary action, if deemed warranted. Corrective actions for students may include disciplinary action up to and including immediate termination of student status (expulsion)…Appeal of a decision made by the dean of an individual's school or his/her designee or the Executive Director for Student Engagement & Success or his/her designee may be made only to the Provost or his/her designee, whose decision is final. Appeal of a decision made by the Provost or his/her designee or the Chief Financial Officer or his/her designee may be made only to the Chair of the Trustee Affairs Committee or his/her designee, whose decision is final. Appeal of a decision made by the Chair of the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Trustee Affairs Committee may be made only to the Chair of the Board of Trustees or his/her designee, whose decision is final."

197.   Fuller's Complaint Resolution Procedures further state: "The seminary values responsible speech and seeks to create and maintain a redemptive environment. Therefore, the seminary strives to protect the privacy of all involved parties....All records of complaints about the conduct of students or authorized student organizations will be maintained by the Office of Student Concerns...All records will be maintained in conformity with state and federal privacy and disclosure requirements and seminary policies and procedures."

198.   Fuller's Complaint Resolution Procedures require students to self-report a divorce: "Students who experience divorce are to report their divorce to the Executive Director of the Office of Student Concerns or his/her designee who will review the circumstances of the divorce and make a recommendation to the dean of the student's school."

199.   Fuller does not have a policy requiring students to self-report a same-sex marriage.

## FIRST CAUSE OF ACTION

## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. §§ 1681, ET SEQ. AS TO ALL DEFENDANTS

## (SEX AND SEXUAL ORIENTATION)

200.   Joanna and Nathan incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

201.   Under Title IX of the Education Amendments of 1972, Fuller is prohibited from discriminating against Joanna and Nathan on the basis of sex and sexual orientation.  20 U.S.C. §§ 1681, et seq.

202.   Defendants discriminated against Nathan and Joanna on the basis of sex, including failure to conform to sex stereotypes, and sexual orientation.

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

203.   Defendants discriminated against Nathan by treating him differently than a similarly situated female.

204.   If Nathan was female, Fuller would not have expelled him for marrying a male.

205.   It is stereotypical for a male to marry a female. Fuller expelled Nathan for failing to conform to a stereotype associated with the male sex.

206.   Defendants discriminated against Joanna by treating her differently than a similarly situated male.

207.   If Joanna was male, Fuller would not have expelled her for marrying a female.

208.   It is stereotypical for a female to marry a male. Fuller expelled Joanna for failing to conform to a stereotype associated with the female sex.

209.   Defendants discriminated against Joanna and Nathan based on their sexual orientation because they expelled Joanna and Nathan for entering into civil same-sex marriages.

210.   If Nathan had entered into a heterosexual marriage, Fuller would not have expelled him.

211.   If Joanna had entered into a heterosexual marriage, Fuller would not have expelled her.

212.   Indeed, even though Joanna had dissolved a heterosexual marriage, Fuller admitted Joanna to its degree program.

213.   Defendants also discriminated against Nathan based on his sex and sexual orientation by subjecting him to different disciplinary processes and stricter disciplinary action than Fuller would have subjected a male student who committed a sexual standards violation with a female or a female student who committed a sexual standards violation with a male.

214.   Defendants also discriminated against Joanna based on her sex and sexual orientation by subjecting her to different disciplinary processes and stricter

disciplinary action than Fuller would have subjected a male student who committed a sexual standards violation with a female or a female student who committed a sexual standards violation with a male.

215.   Fuller monitored and investigated Joanna and Nathan for sexual standards violations using methods that it does not use to monitor or investigate students in heterosexual marriages, male students who have sex with females or female students who have sex with males.

216.   Because of Director Boymook's dual roles and conflicts of interest, Fuller failed to investigate whether Fuller administrators were discriminating against Joanna or Nathan on the basis of their sex or sexual orientation.

217.   As shown in the preceding paragraphs, Defendants' conduct was intentional, willful, and taken in disregard of Joanna and Nathan's federally-protected rights.

218.   As a result of Defendants' conduct, Joanna and Nathan have suffered emotional distress, humiliation, tuition costs, lost wages and other damages.

219.   Joanna and Nathan are entitled to declaratory relief, statutory damages, compensatory damages, treble damages, costs and attorney fees.

## SECOND CAUSE OF ACTION

### UNRUH CIVIL RIGHTS ACT AS TO ALL DEFENDANTS
### (SEX AND SEXUAL ORIENTATION DISCRIMINATION)

220.   Plaintiffs incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

221.   California Civil Code section 51 states, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

facilities, privileges, or services in all business establishments of every kind whatsoever."

222.   As described above, Fuller is a business establishment subject to section 51.

223.   The actions and omissions of Defendants alleged herein constitute a denial of full and equal accommodation, advantages, facilities, privileges, or services by Fuller on the basis of Joanna and Nathan's sex and sexual orientation.

224.   The violations of the Unruh Civil Rights Act caused Joanna and Nathan to experience humiliation, emotional distress, tuition costs, lost wages and other damages as described above.

225.   The Defendants are liable for compensatory damages, statutory damages, attorney fees and costs.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT AS TO DEFENDANT FULLER

### (Count 1)

226.   Joanna and Nathan incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

227.   The actions of Defendant Fuller as described above constitute a breach of an agreement ("the Agreement").

228.   Defendant Fuller agreed to provide educational services to Joanna and Nathan, in accordance with Fuller's policies, in exchange for a fee in the form of tuition.

229.   However, as described above, Defendant Fuller failed to provide educational services to Joanna and Nathan in accordance with Fuller's policies and improperly expelled Joanna and Nathan.

//

//

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

230. Fuller did not follow the procedures outlined in Fuller's student handbook with respect to Nathan and Joanna's investigation, disciplinary and appeal processes, including but not limited to access to disciplinary records.

231. Fuller punished Joanna and Nathan for their civil same-sex marriages even though a civil same-sex marriage is not prohibited by Fuller's code of conduct and Fuller promised not to discriminate on the basis of sexual orientation.

232. Fuller punished Joanna more harshly than it punished male students who committed a sexual standards violation with a female and female students who committed a sexual standards violation with a male.

233. Fuller punished Nathan more harshly than it punished male students who committed a sexual standards violation with a female and female students who committed a sexual standards violation with a male.

234. Fuller misused Joanna's protected information from her tax return.

235. Fuller denied Nathan the opportunity to continue attending classes during his appeal process, which would have allowed him to complete his classes for that quarter.

236. These breaches have proximately caused damage to Nathan such that he is entitled to compensatory damages in the amount of at least $75,000, according to proof at trial.

237. These breaches have proximately caused damage to Joanna such that she is entitled to compensatory damages in the amount of at least $150,000, according to proof at trial.

### (Count 2 – Covenant of Good Faith and Fair Dealing)

238. Nathan and Joanna incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

239. Certain portions of Fuller's Community Standards and Complaint Resolution policies purport to grant discretion to administrators in implementing such policies.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

240.  Defendants abused that discretion, exercised it arbitrarily and in bad faith by depriving them of fair procedures, fair disciplinary action and by ultimately expelling Joanna and Nathan for their same-sex marriages, which were not prohibited by Fuller's code of conduct policies.

241.  Joanna and Nathan did not expect that Fuller would expel them because of their civil same-sex marriages. Joanna and Nathan's expectations were reasonable as Fuller's policies did not prohibit civil same-sex marriage by students, Fuller emphasized the value of diversity and Fuller sanctioned an LGBTQ student group. Joanna and Nathan's expectations were confirmed by the supportive and affirming conduct of numerous students, professors and administrators at Fuller.

242.  These breaches have proximately caused damage to Nathan such that he is entitled to compensatory damages in the amount of at least $75,000, according to proof at trial.

243.  These breaches have proximately caused damage to Joanna such that she is entitled to compensatory damages in the amount of at least $150,000, according to proof at trial.

## FOURTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO ALL DEFENDANTS

244.  Joanna and Nathan incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

245.  As described above, Fuller's conduct was intentional and outrageous for the following reasons:

a.  Fuller punished Joanna and Nathan for exercising their constitutional right to marry the person they love;

b.  Fuller does not prohibit students from entering into civil same-sex marriages, Fuller purports not to discriminate on the basis of sexual orientation,

and students, professors and administrators at Fuller supported Joanna and Nathan's same-sex marriages, yet Fuller punished Joanna and Nathan for their same-sex marriages;

        c.      Fuller violated Joanna's rights under the Federal Educational Privacy Act by misusing Joanna's federally protected, confidential information from her tax return to punish her for her same-sex marriage, rather than for financial aid purposes.

        d.      Joanna asked Director Boymook if Fuller had ever dealt with the situation of a student being disciplined for their same-sex marriage. In response, Director Boymook lied to Joanna by telling Joanna that Fuller had never encountered her situation, even though Director Boymook knew that Fuller had expelled Nathan for his same-sex marriage a year earlier.

        e.      Fuller violated Nathan's rights under the Federal Educational Privacy Act by refusing to provide him with the disciplinary records he needed to make his appeal to the Board of Trustees.

        f.      Fuller backdated Nathan's student records in attempt to prevent him from asserting his rights as a matriculated student.

246.   Defendants' conduct caused Joanna and Nathan to experience humiliation, emotional distress and other damages as described above in the amount of approximately $500,000 each, according to proof at trial.

## FIFTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENATION AS TO DEFENDANT FULLER

247.   Joanna and Nathan incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

248.   Fuller misrepresented its non-discrimination, Title IX, Community Standards and student disciplinary policies and procedures.

     //

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

249.   Fuller represented that it would not discriminate based on sexual orientation.

250.   Fuller represented that it would not discipline students for entering into legal same-sex marriages.

251.   Fuller's representations in the two preceding paragraphs were false because Fuller expelled Joanna and Nathan for legally marrying spouses of the same sex.

252.   Fuller represented that "[t]he seminary is committed to extending Christian love to those involved in strife, marital conflict, or the struggle for sexual identity[.]"

253.   Fuller's representations were false because Fuller acted with harshness, fear and rejection, treating Joanna and Nathan like outcasts by expelling them immediately.

254.   Fuller represented that "[t]he use of seminary disciplinary procedures should always be viewed as a last resort. In no way do they exempt the seminary from making every possible effort to guide the honest pursuit of truth, to encourage wholesome approaches to sexuality, to support stable family life, or to model community relationships that convey respect for people and property."

255.   Fuller's representations were false because Fuller used disciplinary procedures as the first, and only, resort in dealing with Joanna and Nathan's perceived community standards violations.

256.   Fuller's representations were false because Fuller engaged in disciplinary procedures without consideration of how "to support stable family life" for Joanna, Nathan and their families.

257.   Fuller never discussed with Joanna or Nathan how to provide stability to their families as part of Fuller's disciplinary process.

258.   Fuller's actions caused instability in Joanna and Nathan's family life.

//

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

259.   Fuller's representations were false because Fuller chose the harshest form of punishment, immediate expulsion, for Joanna and Nathan.

260.   Fuller could have responded to Joanna and Nathan's purported community standards violations by allowing Joanna and Nathan to finish their current quarters, but Fuller did not.

261.   Fuller represented that it values diversity and inclusion and that lesbian, gay, bisexual and other sexual minority students would be safe, protected and allowed to contribute to the diversity at Fuller.

262.   Fuller sanctioned an LGBTQ student club on campus called OneTable.

263.   Fuller's representations regarding diversity and inclusion were false because Fuller punished and expelled Joanna and Nathan rather than including them and respecting their contributions to diversity at Fuller.

264.   Fuller committed the misrepresentations described above with knowledge of their falsity as applied to students who legally marry a same-sex spouse.

265.   After expelling Nathan for his same-sex marriage, Fuller continued to conceal how it would apply its policies to students in a same-sex marriage when it expelled Joanna for her same-sex marriage.

266.   Fuller intended for Joanna and Nathan to rely on its representations to induce them to select Fuller for their studies and pay tuition to Fuller.

267.   Fuller emphasized the policies described above on its website and in recruiting students to attend Fuller.

268.   Joanna and Nathan were justified in relying on Fuller's representations because Fuller made the representations to Joanna and Nathan as part of the application and enrollment process.

269.   Joanna and Nathan were justified in relying on Fuller's representations because Joanna and Nathan were unaware of the falsity of Fuller's representations.

      //

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

270.   Fuller's representations harmed Joanna and Nathan because their falsity resulted in Joanna and Nathan's denial of process and expulsion from Fuller.

271.   Joanna's expulsion from Fuller delayed her career and caused her to experience humiliation, emotional distress and other damages as described above in the amount of approximately $500,000, according to proof at trial.

272.   Nathan's expulsion from Fuller delayed his career and caused him to experience humiliation, emotional distress and other damages as described above in the amount of approximately $500,000, according to proof at trial.

## SIXTH CAUSE OF ACTION

## EQUITY IN HIGHER EDUCATION ACT, CAL. EDUC. CODE §§ 66270, 66290.1, and 66290.2

273.   Joanna and Nathan incorporate by reference each of the allegations in all prior paragraphs in this Complaint as though fully set forth herein.

274.   California Education Code, Section 66270 provides: "No person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any characteristic listed or defined in Section 11135 of the Government Code or any other characteristic that is contained in the prohibition of hate crimes set forth in subdivision (a) of Section 422.6 of the Penal Code, including immigration status, in any program or activity conducted by any postsecondary educational institution that receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid."

275.   Fuller receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid.

276.   Fuller and its students are covered by the California State Tuition Recovery Fund administered through the California Bureau of Private Postsecondary Education, Department of Consumer Affairs.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

277. California's State Tuition Recovery Fund ("STRF") provides that students enrolled at the time of school closure (or within 120 days of the school's closure) may be eligible for reimbursement through the STRF. The STRF exists to relieve or mitigate economic losses suffered by a student in an educational program at a qualifying institution if the student was a California resident.

278. Fuller is a qualifying institution under STRF.

279. Fuller has also executed a contract with the California Bureau for Private Postsecondary Education for the Bureau's personnel to review and, as appropriate, act on certain complaints concerning Fuller.

280. Pursuant to the Education Code, Section 213(a):

> 'State financial assistance' means any funds or other form of financial aid appropriated or authorized pursuant to state law, or pursuant to federal law administered by any state agency, for the purpose of providing assistance to any educational institution for its own benefit or for the benefit of any pupils admitted to the educational institution.
>
> (b) State financial assistance shall include, but not be limited to, all of the following:
>
> > (1) Grants of state property, or any interest therein.
> >
> > (2) Provision of the services of state personnel.
> >
> > (3) Funds provided by contract, tax rebate, appropriation, allocation, or formula.

281. Fuller receives state financial assistance from California through at least the following means: (1) the provision of the services of state personnel and (2) through funds appropriated or authorized pursuant to STRF, as described above.

//

//

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

282.   Fuller violated California Education Code, Section 66270, by expelling Joanna and Nathan because of their same-sex marriages.

283.   California Education Code, Section 66290.1(a) further provides: "Beginning with the 2017-18 school year, each postsecondary educational institution in this state that claims an exemption pursuant to Section 901(a)(3) of the federal Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681(a)(3)) or has an exemption pursuant to Section 66271 shall disclose to current and prospective students, faculty members, and employees the basis for claiming or having the exemption and the scope of the allowable activities provided by the exemption."

284.   California Education Code, Section 66290.2 further provides: "(a)(1) Beginning with the 2017-18 school year, each postsecondary educational institution in this state that claims an exemption pursuant to Section 901(a)(3) of the federal Title IX of the Education Amendments of 1972 ( 20 U.S.C. § 1681(a)(3)) shall submit to the Student Aid Commission copies of all materials submitted to, and received from, a state or federal agency concerning the granting of the exemption. (2)  Beginning with the 2017-18 school year, each postsecondary educational institution in this state not described in subdivision (a) that has an exemption pursuant to Section 66271 shall submit to the Student Aid Commission its basis for having the exemption. (b)  The Student Aid Commission shall collect the information received pursuant to subdivision (a) and post and maintain a list on the commission's Internet Web site of the institutions that have claimed the exemption with their respective bases for claiming or having the exemption."

285.   Fuller has not disclosed any purported Title IX exemption or the Section 66271 exemption as required by the Education Code.

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

286.   Fuller has not notified the California Student Aid Commission of any purported exemptions and has not provided documents or information concerning the exemption, the basis for the exemption or the scope of the allowable activities provided by the exemption.

287.   Fuller does not appear on the list of institutions that have claimed Title IX or Section 66271 exemptions. This list may be accessed through the website for the California Student Aid Commission.

288.   To the extent Fuller now claims, or has claimed, a Title IX exemption or that it has a Section 66271 exemption, Fuller has violated Sections 66290.1 and 66290.2, which are designed to promote transparency to students and prospective students.

289.   According to Education Code Section 66292.4, violations of Section 66271, 66290.1 and 66290.2 may be enforced through a civil action.

290.   The violations of the Equity in Higher Education Act caused Joanna and Nathan to experience humiliation, emotional distress, tuition costs, lost wages and other damages as described above.

291.   The Defendants are liable for compensatory damages, attorney fees and costs as allowed by statute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

1.   As to Plaintiffs' First Cause of Action:

   a.   A declaration that Defendants violated Title IX;

   b.   An award of all appropriate damages, including but not limited to statutory damages, general damages, and treble damages in an amount to be proven at trial;

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

c.      Attorneys' fees and costs as provided by statute pursuant to 42 U.S.C. § 1988(b).

2.  As to Plaintiffs' Second Cause of Action:

a.      A declaration that Defendants violated the Unruh Civil Rights Act;

b.      An award of statutory damages, compensatory damages, costs and attorney fees pursuant to California Civil Code section 52(a);

3.  As to Plaintiffs' Third Cause of Action:

a.      An award of compensatory damages to Nathan in the amount of at least $75,000, according to proof at trial;

b.      An award of compensatory damages to Joanna in the amount of at least $150,000, according to proof at trial.

4.  As to Plaintiffs' Fourth Cause of Action:

a.      An award of damages in the amount of approximately $500,000 each, according to proof at trial;

5.  As to Plaintiffs' Fifth Cause of Action:

a.      An award of damages in the amount of approximately $500,000 each, according to proof at trial; and

6.  As to Plaintiffs' Sixth Cause of Action:

a.      A declaration that Defendants violated the Equity in Higher Education Act;

b.      An award of compensatory damages, costs, and attorney fees; and

7.  Such other and further relief as the Court deems just and proper.

//

//

//

38

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: January 7, 2020                    DAVIS WRIGHT TREMAINE LLP


By:*/s/ Paul Southwick*
Paul C. Southwick
(Admitted *Pro Hac Vice)*

Attorneys for Plaintiffs
Joanna Maxon and Nathan Brittsan

---

FIRST AMENDED COMPLAINT FOR DAMAGES
4833-0903-3648v.2 0201543-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899