DANIEL H. BLOMBERG (admitted pro hac vice)
ERIC S. BAXTER (admitted pro hac vice)
DIANA M. VERM (admitted pro hac vice)
PETER M. TORSTENSEN, JR. (admitted pro hac vice)
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
Telephone: (202) 955-0095
Fax: (202) 955-0090
dblomberg@becketlaw.com

KEVIN S. WATTLES (Cal. State Bar. No. 170274)
kwattles@slfesq.com
SOLTMAN, LEVITT, FLAHERTY & WATTLES LLP
90 E. Thousand Oaks Boulevard, Suite 300
Thousand Oaks, California 91360
Telephone: (805) 497-7706
Fax: (805) 497-1147

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA MAXON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FULLER THEOLOGICAL SEMINARY, *et al.*,<br><br>Defendants. | No. 2:19-cv-09969-CBM-MRW<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: April 14, 2020<br>Time: 10:00 am<br>Dept: Courtroom 8B<br>Judge: Honorable Consuelo B. Marshall |

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................... 1

    I.    Title IX's religious exemption applies to the Seminary .............................. 1

        A. The Seminary is "controlled by" a religious organization. ................... 1

        B. Applying Title IX here would violate the Seminary's religious tenets. ................................................................................................. 4

    II.   Plaintiffs' Title IX claims violate the Religion Clauses ............................ 5

    III.  Plaintiffs' Title IX claims violate the freedom of association. .................. 7

    IV.  Plaintiffs' Title IX claims violate RFRA. .................................................. 8

    V.   Plaintiffs' state law claims must be dismissed. .......................................... 9

CONCLUSION ................................................................................................. 10

CERTIFICATE OF SERVICE ......................................................................... 11

# ARGUMENT[1]

**I. Title IX's religious exemption applies to the Seminary.**

    **A. The Seminary is "controlled by" a religious organization.**

Plaintiffs admit that if Fuller Theological Seminary were a Catholic seminary owned by the Catholic Church, it would be protected by Title IX's religious exemption. Opp.7, 9. Yet, claiming to apply "'traditional tools of construction," Plaintiffs insist that the exemption does not apply to the Seminary. Opp.7, 9. Specifically, Plaintiffs would have this Court discriminate in favor of seminaries that *by doctrine* are bound to hierarchical churches via ownership relationships, while excluding seminaries that *by doctrine* are bound to their denominations using different legal relationships. Such a ruling would be the first to apply the nearly 40-year-old statute in that manner, sending shockwaves through the more than 200 seminaries nationwide subject to Title IX. *See* n.6, *infra*. It would also provoke a constitutional crisis by violating the "[t]he clearest command of the Establishment Clause": that "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

But no crisis is necessary. Another traditional tool of construction is constitutional avoidance: "an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." *NLRB. v. Catholic Bishop*, 440 U.S. 490, 500 (1979). Absent "a clear expression of Congress' intent" requiring otherwise, courts must "decline to construe [an] Act in a manner that" would violate—or even just raise "difficult . . . questions" under—"the First Amendment Religious Clauses." *Id.* at 507. Thus, the question for the Court here is not just what is the *best* interpretation of Title IX's religious exemption, but whether there is a *permissible* interpretation that avoids the constitutional conflict Plaintiffs invite. *Id*. at 504. Here, that test is easily satisfied, and along the very lines adopted by every Administration since 1985.

---

[1] Plaintiffs heavily relied on Exhibits 2-10 in the FAC, *see* Dkt. 47, and they do not contest the exhibits' authenticity or reliability, so the exhibits are properly considered here. Mem.1, n.1.

Title IX's religious exemption applies to an "educational institution" that is "controlled by a religious organization." 20 U.S.C. § 1681. There is no question that the Seminary is an "educational institution" under the Act. And the requirement for "control by a religious organization" is also met. Under its "ordinary meaning," *Animal Legal Def. Fund v. USDA*, 933 F.3d 1088, 1093 (9th Cir. 2019), "organization" denotes any "organized body, system, or society." Oxford English Dictionary (2d ed. 1989). It does not, as Plaintiffs suggest, mean a separately incorporated, entirely unrelated entity. The Seminary's controlling religious board and its 73-year-old system of successfully maintaining its religious identity, beliefs, and practices (including through its strict bylaws, *see* Ex.1, Arts. II-III, V-VI) are each an "organized body" or "system" that satisfies the "controlled by" standard.

The Department of Education's Singleton Memo reinforces this reading of the statute. It states that the "controlled by" requirement is "normally" met if any "one" of several conditions applies, including if the institution is a "divinity school" focused on preparing students "to become ministers," to enter "some other religious vocation," or "to teach theological subjects." *See* https://perma.cc/2P9F-W98H at 25. It makes eminent sense for the religious-control requirement to be met for divinity schools: their entire purpose is religious, so the control is self-evident. Indeed, Congress specifically had seminaries "in mind" when in drafted the religious exemption. 134 Cong. Rec. H565-02 (1988), 1988 WL 1083034.

Plaintiffs argue that the Department's Singleton Memo is owed no deference because "courts defer to agency interpretations" only if their authorizing law is "ambiguous." Opp.8. But if anything, Plaintiffs *introduce* ambiguity. The exemption clearly applies to any educational institution "controlled by a religious organization" such as the Seminary's board. Plaintiffs must introduce phrases like "two *separate* entities" and "two *distinct* entities" to support their reading. Opp.9. This shows that ambiguity is Plaintiffs' *best*-case scenario. And where there is ambiguity, the Court should defer to agency guidance.

Plaintiffs claim that "the legislative history of Title IX supports [their] narrow reading of the control test." Opp.10. Not so. What Plaintiffs cite is not Title IX's legislative history, but the history of an attempt fifteen years later to amend "controlled by" to "closely identified with." S. Rep. 100-64 (1987), 1987 WL 61447, at *27. Such "[s]ubsequent legislative history" has inherent "difficulties" and should not be taken too seriously. *Sullivan v. Finkelstein,* 496 U.S. 617, 628 n.8 (1990). But here in any case it does not say what Plaintiffs think. The amendment failed precisely because Congress *agreed* with the Singleton memo's "record of implementation," thus removing "any need to broaden the religious tenet provision." *Id.* at *21. Indeed, by the time of the amendment's consideration, the Department of Education had recognized exemptions for dozens of self- or board-controlled religious institutions. See https://perma.cc/5RJV-ALQY. Against this backdrop, the Senate committee recited in full the Singleton memo's definition of "controlled by" and concluded that "the religious tenet exemption in Title IX" should be left "intact." 1987 WL 61447, at *21, *20. The House Report similarly suggests that Congress agreed that an amendment was "unnecessary" because the "track record . . . is clear and unequivocal" that exemptions are "never denied." 1988 WL 1083034. House testimony also stated that Congress particularly expected that the "vast bulk" of exemptions would go "to seminaries." *Id*.

Thus, unlike Plaintiffs, the amendment's opponents were not focused on control by a separately incorporated religious organization. They were simply concerned that "a loose definition" of the exemption would "invite[] mischief" by allowing institutions to claim the exemption "no matter how tenuous the religious connection." 1988 WL1083034 (noting also that vagueness of the amendment's "identified with" language would create "serious 1st [A]mendment problems"). They were satisfied that the existing Singleton Memo could continue to "be applied in a sufficiently flexible manner to avoid significant problems." 1988 WL 1083034.  Thus, there is no "clear expression" of the Title IX "Congress' intent" to discriminate among similarly situated religious institutions of education. *See Catholic Bishop*, 440 U.S. at 507.

Plaintiffs' comparison between the religious exemption in Title IX and the religious exemption for educational institutions in Title VII is also confused. Opp.9-10. In the first place, construing two statutes on similar subjects *in pari materia* "makes the most sense when the statutes were enacted by the same legislative body at the same time." *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972). Here, there is a fifteen-year gap. But more importantly, the point of the doctrines is to "harmonize" related provisions, "unless legislative history or purpose suggests material differences." *In re Joye*, 578 F.3d 1070, 1076 n.1 (9th Cir. 2009). Plaintiffs have identified no reason—let alone a legitimate, constitutional reason—why Congress would have departed from its Title VII approach to discriminate under Title IX among religious denominations.

Finally, Plaintiffs are wrong that Title IX's implementing regulations *mandate* that the Seminary apply for an exemption. Opp.10-11. As Plaintiffs themselves note, an implementing regulation cannot be construed to conflict with its unambiguous authorizing statute. Opp.8-9. Title IX states clearly that it "shall not apply" in case of a religious conflict. 20 U.S.C. § 1681(a)(3). It imposes no requirement to "claim the exemption" or otherwise notify the Department by writing to the Secretary.

**B. Applying Title IX here would violate the Seminary's religious tenets.**

Plaintiffs do not dispute that enforcing Title IX against the Seminary here would conflict with its sincerely held religious beliefs. *See* Opp.2-3; Mem.4-5. And both parties agree on the reason for Plaintiffs' dismissal: Plaintiffs entered same-sex marriages and were dismissed under the Seminary's community standards. *See* FAC ¶¶ 2-3 (dismissal "because of [their] same-sex marriage[s]"). This agreement distinguishes *Goodman v. Archbishop Curley High School*, which concerned a dispute over the basis for termination. 149 F. Supp. 3d 577 (D. Md. 2016). And it places this case firmly in line with *Garrick v. Moody Bible Institute*, where the undisputed "justification for the adverse action" was "rooted firmly in [defendants'] religious beliefs," activating the Title IX exemption. 412 F. Supp. 3d 859, 871-72 (N.D. Ill. 2019). As *Moody Bible* observed, a

4

claim of sexual-orientation discrimination must fail if the challenged action is "rooted in the [defendants'] doctrinal opposition to same-sex marriage." *Id.* Just so here.

Plaintiffs argue that "seemingly contradictory policies and practices" suggest that the dismissals were "based on the personal animus of a couple of administrators[.]" Opp.11. But Plaintiffs have admitted that their Title IX claims against the individual defendants must be dismissed, and there is no liability under Title IX "based on principles of *respondeat superior* or constructive notice." *Gebser v. Lago Vista Indep. Sch.*, 524 U.S. 274, 285 (1998). So the speculated "animus" is irrelevant. Nor can courts second-guess the Seminary's final religious admissions decisions, which it may "decide for [itself], free from state interference." *Kedroff v. St. Nicholas Cath.*, 344 U.S. 94, 116 (1952).[2]

**II. Plaintiffs' Title IX claims violate the Religion Clauses.**

Plaintiffs do not contest that their Title IX claims would force this Court to delve into and exercise judgment over the Seminary's religious beliefs, interfere with its religious discipline process, and overturn its religious decisions about who to train as a minister. Mem.11-15. Plaintiffs' only responses are two broad—and novel—categorical limitations on the Religion Clauses that would undermine the separation of church and state.

*First*, Plaintiffs make the purely empirical claim that the church autonomy doctrine has been applied "exclusively" to churches and "never" to other religious groups. Opp. 12-13. But they offer no principled explanation why the Religion Clauses cannot apply to "matters of . . . faith and doctrine" at seminaries. *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 198 (2012). And their empirical claim is wrong. *Paul* ruled in favor of the "corporate arms of the Governing Body of Jehovah's Witnesses," not the church as such. 819 F.2d 875 (9th Cir. 1987). Mem.12-13. *Puri v. Khalsa* affirmed that the Religion Clauses

---

[2] Title IX's prohibition on "sex" discrimination does not prohibit "sexual orientation" discrimination. Mem.9-11. But because the religious exemption applies, the Court need not resolve the issue. That the Supreme Court will shortly rule on it under Title VII further commends restraint.

5

protect the "sphere of autonomy constitutionally guaranteed to *religious organizations*"—not just churches—and applied that protection to "management boards of organizations" which were "not churches." 844 F.3d 1152, 1157, 1161-62 (9th Cir. 2017). Many courts have upheld church autonomy protections for religious schools. Mem.12.[3] The Supreme Court has also affirmed them in the context of same-sex marriage: "religious organizations" must be given "proper protection" "to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015).

*Second*, Plaintiffs partially retract their church-only argument for one aspect of church autonomy doctrine: the ministerial exception. They do not dispute that a seminary can raise this defense. Opp.14.[4] Nor do they contest that it applies to them as recipients of ministerial training. Mem.14. Instead, they make yet another broad empirical claim: that courts apply the exception solely to *employment* claims. But the ministerial exception "also relates to the broader relationship between an organized religious institution and its clergy." *Werft v. Desert Sw. Annual Conf.*, 377 F.3d 1099, 1103 (9th Cir. 2004). "Just as there is a ministerial exception to Title VII, there must also be one to *any* federal or state cause of action that would otherwise impinge on the Church's prerogative to choose its ministers." *Id.* at 1100 n.1 (emphasis added). Courts have accordingly applied the exception to claims by non-employees and to tort and contract claims.[5] And the exception is thus also appropriate for those who enter a "seminary program to become a

---

[3] *Petruska* v. *Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006); *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455 (D.C. Cir. 1996); *Yin v. Columbia Int'l Univ.*, 335 F.Supp.3d 803 (D.S.C. 2018); *Klouda v. Sw. Baptist Theological Seminary*, 543 F. Supp. 2d 594 (N.D. Tex. 2008).

[4] Ministerial exception cases are church autonomy cases. *Hosanna-Tabor*, 565 U.S. at 185-88; *Kedroff*, 344 U.S. at 116 (affirming constitutional "[f]reedom to select the clergy").

[5] *Hubbard v. J Message Grp.*, 325 F. Supp. 3d 1198 (D.N.M. 2018) (IIED, defamation, false-light claims by non-employee); *Headley v. Church of Scientology*, 2010 WL 3184389 (C.D. Cal. 2010) (TVPA claim by non-employee); *Hutchison v. Thomas*, 789 F.2d 392 (6th Cir. 1986) (loss of consortium claim by non-employee); *Schleicher v. Salvation Army*, 518 F.3d 472 (7th Cir. 2008) (unpaid ministers); *Lee v. Sixth Mount Zion*, 903 F.3d 113 (3d Cir. 2018) (contract).

minister" and sue over their "seminary training." *Alcazar v. Corp. of the Catholic Arch.*, 627 F.3d 1288, 1292-93 (9th Cir. 2010).

Finally, Plaintiffs assert that the Religion Clauses are "irrelevant" and do not protect against governmental "meddling in [the Seminary's] private affairs" if it comes as a condition to receipt of federal funds. Opp.13. But "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran v. Comer*, 137 S. Ct. 2012, 2022 (2017). Nor does "accepting federal and state funds" waive rights under the Religion Clauses, *Petruska*, 462 F.3d at 309, including for purposes of Title IX, *Moody Bible*, 412 F. Supp. 3d at 871; *Petruska v. Gannon Univ.*, 2008 WL 2789260, at *7 (W.D. Pa. 2008), in part because courts have an independent duty to avoid adjudicating claims that require entanglement in religious affairs, *Lee*, 903 F.3d at 118 n.4. Ruling otherwise would chill religious rights of over 200 seminaries and theology schools nationwide that accept students who use federal loans.[6] Plaintiffs' claims are thus "fraught with the sort of entanglement that the Constitution forbids." *Lemon v. Kurtzman*, 403 U.S. 602, 620 (1971).

**III. Plaintiffs' Title IX claims violate the freedom of association.**

Plaintiffs concede both elements of the Seminary's freedom of association defense: the Seminary "is an expressive association with associational rights," and its expression would be harmed if Plaintiffs' claims are enforced. Opp.15. Plaintiffs must thus pass strict scrutiny—"the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997)—by showing that their claims narrowly serve compelling state interests, *CLS v. Martinez*, 561 U.S. 661, 682, 685 (2010). But Plaintiffs' sole cited "interest" boils down to the funding argument refuted above. Opp.16-18. Nor

---

[6] *2017 Post-Secondary Institutions in Title IV Programs* (2018), https://nces.ed.gov/ipeds/datacenter/data/HD2018.zip (listing, *inter alia*, schools in footnote 3, *supra*, which successfully raised Religion Clauses defenses against federal nondiscrimination claims); see also *Spreadsheet Description & Definitions* (2018), https://nces.ed.gov/ipeds/datacenter/data/HD2018_Dict.zip (listing over 200 "[t]heological seminaries and other specialized faith-related institutions" that accept students who rely on federal aid).

is there a compelling "state" interest in interfering with theological seminary training. Hence EEOC's concession that "it would violate the First Amendment" to "compel the ordination of women . . . by an Orthodox Jewish seminary." Mem.16.

Plaintiffs' cases also cut against them. *Martinez* emphasized that free-association rights lose strict-scrutiny protections only in a limited-public-forum case. 561 U.S. at 680-82. But this is not a limited-public-forum case, and so *Martinez* affirms that Plaintiffs must pass strict scrutiny. *Id.* *Norwood* and *Runyon* illustrate why Plaintiffs cannot pass that test. The government's obviously strong interest in ensuring that schoolchildren avoid truancy and racial discrimination does not compare to the matters at issue here: adults' optional theological training at a seminary. *See also Runyon v. McCrary*, 427 U.S. 160, 167 (1976) (distinguishing the harder "question of the right of a private school" to make admissions decisions in accordance with its "religious faith"). And *Grove City* only held that it was "reasonable" for Congress to request that a college agree to certify its willingness to comply with Title IX *at all*, and did not upset the general rule, noted above, which limits "Congress' ability to place conditions on the receipt of funds" where it would infringe First Amendment rights if directly imposed. *Rumsfeld v. FAIR*, 547 U.S. 47, 59 (2006).

**IV. Plaintiffs' Title IX claims violate RFRA.**

Plaintiffs do not contest that their claim will substantially burden the Seminary's religious beliefs, Mem.17-18, but attempt to prove up their strict scrutiny burden by asserting that all nondiscrimination laws pass strict scrutiny, Opp.19. But that's not true. Mem.15-16; *Catholic Univ.*, 83 F.3d at 470 (Title VII claim); *Hankins v. Lyght*, 441 F.3d 96, 103 (2d Cir. 2006) (ADEA claim). Plaintiffs also cite out-of-circuit cases to argue that RFRA does not apply to suits between private parties. Opp.18. But the Ninth Circuit has recognized that RFRA expressly may be raised as a defense against any "person acting under color of law"—including private parties suing under federal laws. *Sutton v. Providence St. Joseph Med.*, 192 F.3d 826, 834 (9th Cir. 1999). Moreover, RFRA is "an amendment of existing federal statutes," *accord Worldwide Church of God v. Phila.*

8

*Church of God*, 227 F.3d 1110, 1120 (9th Cir. 2000) (citing *In re Young*, 141 F.3d 854 (8th Cir. 1998)), and it "applies to all federal law, and the implementation of that law," 42 U.S.C. § 2000bb-3(a). Thus, RFRA is built into Title IX.

**V. Plaintiffs' state law claims must be dismissed.**[7]

*Unruh Act*. Plaintiffs argue that the Seminary is a business establishment because it sells its services to the public. Opp.20. But a religious school does not become a "business establishment" by charging tuition as a "source of funding for 'the basic activities or services' that it offers." *Doe v. Cal. Lutheran*, 88 Cal. Rptr. 3d 475, 484 (Cal. Ct. App. 2009); Ex.11, *Calif. Baptist Univ.*; 81 Ops. Cal. Att'y Gen. 189 at *4 (1998) (religious school "with programs designed to teach . . . moral principles" cannot be "considered a business establishment"). Plaintiffs' reliance on *Optimum Health* and *Pines* also fails. *Optimum Health*'s health program involved "the sale of access" to its services to "nonmembers, nonadherents and nonbelievers," while the Seminary only admits Christians who agree to its community standards. 810 F. Supp. 2d 1074, 1088 (S.D. Cal. 2011). And the entity in *Pines* had "businesslike attributes," such as the "sale of commercial advertisements" and an admittedly "commercial and economic purpose," that are not present here. 206 Cal. Rptr. 866, 875-76 & n.10 (Cal. Ct. App. 1984). Finally, Maxon concedes that "she is a Texas resident who did not physically attend classes in California." Opp.21. Thus, her claim fails. Mem.20.

*Statute of Limitations*. Brittsan concedes that the only surviving allegations within the two-year limitations period concern his records request, and then asserts that the continuing violations doctrine saves his claims. *See* Opp.22 (citing FAC ¶¶ 152-160). But "discrete acts" like those alleged here are time-barred if they fall outside the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Moreover, his cited cases involved "ongoing conduct" not present here. Opp.22.

---

[7] If this Court dismisses the Title IX claims, it should "declin[e] to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997).

*Contract.* Plaintiffs argue that if "their same-sex marriages . . . violate their contracts with Fuller," the contracts are unenforceable. Opp.23. But the right to marry runs against the government, not against religious groups. *Demkovich v. St. Andrew*, 2017 WL 4339817, at *5 (N.D. Ill. 2017). And courts routinely enforce "morals clauses" in religious school contracts. *Cline v. Catholic Diocese*, 206 F.3d 651, 666 (6th Cir. 2000).

*Fraud.* Plaintiffs do not contest that the Seminary warned them that it "*does* lawfully discriminate on the basis of sexual conduct that violates" its community standards. Mem.23 (quoting FAC ¶ 191). Their fraud claim thus fails. Opp.24.

*IIED.* Plaintiffs provide no authority suggesting that the Seminary's conduct was "extreme and outrageous."[8] They simply reassert their factual claims, Opp.22, none of which "go beyond all possible bounds of decency . . . to be regarded as atrocious, and utterly intolerable in a civilized community" *Helgeson v. Am. Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) (internal quotation marks omitted).

*EHEA.* Plaintiffs do not dispute that the Seminary has a religious exemption from EHEA. Mem.23. Nor do they offer a persuasive defense of EHEA's speech requirements targeted at religious institutions. Mem.25. The claims must thus be dismissed. Furthermore, the EHEA is not applicable here, as Plaintiffs identify no state student financial aid for which Fuller students would even be eligible. Nor are STRF reimbursements "state financial assistance," Opp.25: they are made to students, not to the Seminary.

## CONCLUSION

This Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated: March 31, 2020                    Respectfully submitted,

SOLTMAN, LEVITT, FLAHERTY         BECKET FUND FOR RELIGIOUS
& WATTLES LLP                                  LIBERTY
/s/ Kevin S. Wattles                              /s/ Daniel Blomberg
KEVIN S. WATTLES                           DANIEL BLOMBERG
                                                         *Counsel for Defendants*

---

[8] Brittsan does not contest that the sole surviving allegation supporting his IIED claim was the Seminary's refusal to provide requested documents. Mem.21; Opp.22. But he focuses instead on his dismissal. Opp.22. Because that occurred beyond the limitations period, his IIED claim fails.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2020, I electronically filed the foregoing application with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

/s/ Daniel Blomberg
DANIEL BLOMBERG