DANIEL H. BLOMBERG (admitted pro hac vice)
ERIC S. BAXTER (admitted pro hac vice)
DIANA M. VERM (admitted pro hac vice)
PETER M. TORSTENSEN, JR. (admitted pro hac vice)
THE BECKET FUND FOR RELIGIOUS LIBERTY
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
Telephone: (202) 955-0095
Fax: (202) 955-0090
dblomberg@becketlaw.com

KEVIN S. WATTLES (Cal. State Bar. No. 170274)
SOLTMAN, LEVITT, FLAHERTY & WATTLES LLP
90 E. Thousand Oaks Boulevard, Suite 300
Thousand Oaks, California 91360
Telephone: (805) 497-7706
Fax: (805) 497-1147
kwattles@slfesq.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA MAXON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FULLER THEOLOGICAL SEMINARY, *et al.*, <br><br> Defendants. | No. 2:19-cv-09969-CBM-MRW <br><br> **REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> (Notice of Motion and Motion, and [Proposed] Order Filed Concurrently) <br><br> Date: June 30, 2020 <br> Time: 10:00 a.m. <br> Dept: Courtroom 8B <br> Judge: Honorable Consuelo B. Marshall |

Courts regularly stay discovery when a motion to dismiss *may* dispose of an entire case and discovery is unnecessary to resolve the dismissal motion. Dkt. 58-1 ("Mem.") at 1-6. And that is doubly true where, as here, permitting discovery would raise sensitive issues of Church-State entanglement. Mem. 6-8.

Plaintiffs largely ignore this standard approach. Instead, they turn to the merits of the pending motion to dismiss, arguing that the Seminary has been stripped of numerous statutory and constitutional protections simply because some of its theology students use federal loans to pay for some of their religious training. That argument is wrong as a matter of law. Dkt. 55 at 7. More to the point, that argument is misplaced. Obtaining a stay does not first require winning a motion to dismiss. The *potential* to resolve an entire case is enough, and Plaintiffs do not show otherwise.

Plaintiffs also try to backtrack from their concession that this case's "core factual issues" are not in dispute. Mem. 3. Now, four months after the motion to dismiss was filed in February and three months after their response in March failed to identify relevant factual issues, Plaintiffs suddenly uncover a need for discovery into the Seminary's First Amendment and statutory defenses. Dkt. 59 ("Opp.") at 1. That tardy concern is also misplaced. By its nature, a Rule 12(b)(6) motion relies on facts alleged by the plaintiff, incorporated by reference in the complaint, and available through judicial notice. A determination of the complaint's legal sufficiency based on *these* facts must precede further intrusion into the Seminary's internal religious affairs.

Justices Alito and Kagan have warned that the "worthy" goal of eliminating discrimination can make it "easy to forget" that courts have rightly "long recognized that the Religion Clauses protect a private sphere within which religious bodies are free to govern themselves in accordance with their own beliefs." *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 199 (2012). And just yesterday, the Supreme Court again affirmed its commitment to "preserving the promise of the free exercise of religion enshrined in our Constitution" against nondiscrimination claims, pointing to the kinds of statutory and constitutional safeguards the Seminary has raised here. *Bostock v. Clayton Cty*., No. 17-1618,

1


2020 WL 3146686, at *17 (U.S. June 15, 2020). Plaintiffs would have this Court forget that promise and take the unprecedented step of overruling the Seminary's theological decisions about who to train as Christian ministers. Before permitting discovery into such claims, the Court should first resolve their legal sufficiency.

## ARGUMENT

**I. This Court should stay discovery until it resolves the pending motion to dismiss.**

The Seminary's motion to dismiss could eliminate Plaintiffs' entire case. It makes no sense for the parties to engage in discovery now, since the effort may prove entirely unnecessary. Indeed, the whole purpose of Rule 12(b)(6) motions is "to enable defendants to challenge the legal sufficiency of a complaint *without* subjecting themselves to discovery." *Quezambra v. United Domestic Workers of Am. AFSCME Local 3390*, No. 8:19-cv-00927, 2019 WL 8108745, at *2 (C.D. Cal. Nov. 14, 2019) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (emphasis added)). That is why, Plaintiffs' unsupported assertions notwithstanding, the Ninth Circuit routinely affirms decisions to stay while dismissal motions are pending. *White v. Regents of Univ. of Cal.*, 188 F.3d 516 (9th Cir. 1999); Mem. 2 & n.1.

**A.    Plaintiffs largely do not dispute the traditional factors favoring a stay.**

Courts in this district primarily consider: (i) whether the pending motion is potentially dispositive and (ii) whether it requires any further discovery to resolve. Mem. 2 (citing *Quezambra*, 2019 WL 8108745, at *2). Importantly, Plaintiffs do not dispute the first prong, conceding that Defendants' motion to dismiss could resolve the entire case. Regarding the second prong, Plaintiffs initially agreed that "[t]he core factual issues are not in dispute at this stage of the litigation"; that the parties "mainly dispute the legal significance of the facts"; and that the parties would later "meet and confer to discuss the possibility of submitting stipulated facts." Dkt. 57 at 1. Now, however, Plaintiffs claim that there are "numerous factual issues in dispute" relating to the Seminary's "First

Amendment and statutory exemption defenses." Opp. 1.[1] But this argument miscomprehends the nature of the Seminary's motion to dismiss. Under Rule 12(b)(6), the motion challenges the legal sufficiency of the facts *as alleged by the Plaintiffs*, not the facts that might be discovered at some later stage of the litigation.

Plaintiffs appear to argue that the Seminary's motion to dismiss is deficient in this respect because the "elements of the defense[s]" asserted supposedly do not "appear on the face of the complaint."[2] But Plaintiffs ignore the blackletter law that allegations "on the face of the complaint" include facts in documents cited in the complaint (even when "not physically attached") or available via judicial notice. *United Alloys v. Baker*, 2010 WL 11515471, at *3 (C.D. Cal. Mar. 26, 2010) (quoting *In re Silicon Graphics, Inc. v. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)); *see also United States v. E. Mun. Water Dist.*, 2008 WL 11336756, at *2 (C.D. Cal. Mar. 18, 2008) (same) (citing 5C Wright & Miller, Fed. Prac. & Proc. Civ.3d § 1367).

The Seminary's motion to dismiss relies exclusively on such facts. Plaintiffs' complaint acknowledges: that the Seminary is "religious in nature" (FAC ¶ 4); that the Seminary required, and Plaintiffs agreed, to follow Biblical standards (FAC ¶ 191); that both Plaintiffs were Christian (FAC ¶¶ 6, 8); that both Plaintiffs were pursuing religious degrees (FAC ¶¶ 21, 29, 40); and that Plaintiff Brittsan specifically wanted training to become a Christian minister (FAC ¶ 40). And Plaintiffs have not disputed that the Court can take judicial notice of the Seminary's Articles of Incorporation, which state the Seminary is "operated exclusively for religious purposes" and is organized "to prepare men

---

[1] In full, the Rule 26(f) Report states: "The core factual issues are not in dispute: The parties agree that Fuller dismissed Plaintiffs because of their same-sex marriages. The parties mainly dispute the legal significance of the facts." Dkt. 57 at PageID.370. Plaintiffs attempt to obscure the natural reading by conveniently emphasizing only the middle sentence while ignoring context. They argue the parties only agreed about the reason for Plaintiffs' dismissal, presumably silently contesting everything else. Dkt. 59 at PageID.397. Of course, the Report says the opposite. That this language was in a section entitled "Facts in Dispute," not "Facts *not* in Dispute," only reinforces as much.

[2] Plaintiffs' citation to *Jones v. Bock*, 549 U.S. 199 (2007), to support this argument is mistaken. Opp. 2. The quoted language comes from *Puri v. Khalsa*, 844 F.3d 1152, 1158 (9th Cir. 2017).

3

and women for the manifold ministries of Christ and his Church." Dkt. 47-1 at 1; Dkt. 52 (Plaintiffs' notice of non-opposition).  It is these and other such facts, alleged by Plaintiffs themselves, that support the Seminary's motion to dismiss under the Title IX religious exemption, the U.S. Constitution's Religion and Free Speech Clauses, and the Religious Freedom Restoration Act (RFRA).

Considering Plaintiffs' own allegations and failure to dispute that the motion to dismiss potentially will dispose of the entire case, it is unclear why Plaintiffs oppose the stay at all. And because the Seminary's motion promises to resolve the entire case without need for discovery, a stay is warranted. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) ("Discovery is only appropriate where there are factual issues raised by a Rule 12(b) motion."); *Quezambra*, 2019 WL 8108745, at *2 (same).

**B.    Plaintiffs fail to show any other considerations weigh against a stay.**

While the Ninth Circuit generally treats the foregoing factors as dispositive, some district courts also consider whether there are any crossclaims, whether all defendants agree to the stay, and the stage of litigation, expected scope of discovery, and case complexity. Mem. 4. Plaintiffs again fail to dispute these considerations, all of which support a stay. Mem. 4-6. This case is still in its very early stages and concededly will turn largely on legal issues, even after full discovery. Thus, this is not a situation where a stay would disrupt depositions (none are scheduled) or major ongoing discovery efforts (Plaintiffs issued their first request only a week ago, on the same day that they filed their response to this motion). Further, this is not a factually complicated case, and any discovery should not be lengthy. *See* Mem. 4-5 (listing case law identifying discovery needs and case complexity as relevant factors). The Rule 26(f) Report does not designate this as a "complex" case, identifies *no* factual disputes, and contemplates completing discovery within a few months. Dkt. 57 at 2, 5, 7. Finally, all Defendants joined the stay request and Defendants have raised no counterclaims.

Ignoring all these factors, Plaintiffs' instead argue they will ultimately survive Defendants' motion to dismiss. But likelihood of success on the pending motion is largely

4


beside the point for purposes of the stay analysis. As courts in this district—and the Ninth Circuit—have emphasized, the proper inquiry is whether the pending motion is "*potentially* dispositive." Mem. 2 (quoting *Quezambra*, 2019 WL 8108745, at *2 (emphasis added)). Plaintiffs make no effort to contest that the motion to dismiss is not at least "potentially" dispositive, thus conceding this primary consideration.

At worst, a potentially unsuccessful motion to dismiss would only be one factor against granting a stay. But even that little weight on the scale has no application here, because the Seminary's motion to dismiss *is* likely to succeed, in no small part because Title IX's religious exemption, the First Amendment, and RFRA all provide significant protections to religious organizations such as a theological seminary. *Hosanna-Tabor*, 565 U.S. at 196. At minimum, the court should stay discovery long enough to address these threshold issues to avoid entanglement in church matters. *See* Mem. 6.

Plaintiffs contend that these laws protecting religious protections have no application here, because some Seminary's students rely on federal loans to cover their tuition and because "[t]he First Amendment does not compel the government to subsidize discriminatory practices." Opp. 3. This is wrong for at least two reasons.

First, far from fitting "comfortably" within a "long line" of Supreme Court precedent, Opp. 3, Plaintiffs' three cited cases are all inapposite. Dkt. 55 at 8. *Grove City College v. Bell* considered whether Title IX applied *at all* to a private liberal arts college (not an issue here) and had nothing to do with religious autonomy (the core issue here). 465 U.S. 555 (1984); Dkt. 55 at 8. While *Christian Legal Society v. Martinez* did involve the First Amendment, it cuts the other way, emphasizing that Free Speech and Free Association rights lose strict-scrutiny protections *only* in limited public forums that are viewpoint neutral. Dkt. 55 at 8.  It in no way diminished the First Amendment rights of a religious institution's control over its internal affairs, even if it is a school whose students take federal loans. Finally, *Bob Jones University v. United States* held only that the country's uniquely "overriding interest in eradicating racial discrimination" justified withdrawing a university's tax-exempt status based on its ban on interracial marriage and dating

among students. 461 U.S. 574, 604 (1983). But, in addition to other distinctions, the Supreme Court has already acknowledged that no such overriding interest exists in cases like this one, and that religious groups "who deem same-sex marriage to be wrong reach that conclusion based on decent and honorable religious or philosophical premises" and are entitled to "proper protection" "to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602, 2607 (2015).

Second, Plaintiffs have not cited a single case to support their theory that the government can use federal funding to restrict the Seminary's First Amendment right to choose who it trains for ministry. But there are a number of cases which confirm that the Seminary has a longstanding right to accept government funds "without having to disavow its religious character," *Trinity Lutheran v. Comer*, 137 S. Ct. 2012, 2022 (2017), or otherwise waive its rights under the Religion Clauses, *see* Dkt. 55 at 7 (collecting cases). Nor can the government so easily circumvent its duties under the Establishment Clause not to entangle itself in religious questions or internal religious governance. *Id.*

Moreover, the First Amendment is not the Seminary's only defense. The Title IX religious exemption and RFRA also both require the government to defer to a religious organization's beliefs and practice and avoid the entanglement in internal religious affairs that Plaintiffs' claims would, if taken seriously, impose on seminaries nationwide.

\*          \*          \*          \*          \*

The Seminary is not looking to dodge its discovery obligations. To the contrary, the Seminary has participated in the Rule 26(f) conference, jointly submitted the Rule 26(f) status report, and produced initial disclosures. The Seminary simply seeks to avoid, burdensome, entangling, and intrusive discovery before its motion to dismiss on constitutional and other religious liberty grounds has been resolved.

**II.     A stay is appropriate to avoid entanglement in religious affairs.**

Plaintiffs do not contest that the Religion Clauses grant religious organizations immunity from premature discovery, that it is standard for courts to enter stays of discovery

while dispositive motions raising immunity defenses are pending, or that courts adjudicate church autonomy defenses "at the earliest possible stage of litigation" to "avoid excessive entanglement in church matters," *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 654 & n.1. Mem. 6-7. That is enough to grant a stay.

Plaintiffs' far-reaching discovery requests only *magnify* these entanglement concerns. *See* Dkt. 60-1. They seek sensitive internal documents and information concerning: the Seminary's formulation, deliberation, and internal expression of its religious beliefs and its internal religious governance; its religious associations with other religious bodies; internal religious decisions and disciplinary matters associated with its religious beliefs; the religious beliefs and associations of the Seminary's individual employees and faculty; and the religious beliefs of religious student associations formed on the Seminary's campus. Dkt. 60-1, Requests 2-3, 8-9, 12-18.

This kind of intrusive discovery is impermissible. Mem. 6-8. Moreover, whole lines of inquiry that Plaintiffs seek to pursue are barred. For instance, it is unconstitutional for civil courts to engage in the kind of pretext inquiry that seeks to determine whether seminary students' "dismiss[als] for getting married . . . w[ere] actually based on a ground forbidden by the federal antidiscrimination laws," since that would "dangerously undermine … religious autonomy." *See Hosanna-Tabor*, 565 U.S. at 205-06 (Alito, J., joined by Kagan, J., concurring); *id.* at 195-96 (pretext analysis forbidden). Such discovery would be particularly problematic where, as here, Plaintiffs still concede there is no dispute over the Seminary's "reason for expelling Plaintiffs." Opp. 4. Claims that would require courts to "measure the degree of severity of various violations of Church doctrine" are similarly unconstitutional. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 137, 139 (3d Cir. 2006). Indeed, the "very process of inquiry" can "impinge on rights guaranteed by the Religion Clauses" in a case raising the kind of sensitive internal inquiries this one does. Mem. 6 (citing *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979)). Thus, permitting such broad discovery prior to the resolution of the Seminary's religious autonomy defense would irreparably harm its constitutional rights,

*McCarthy v. Fuller*, 714 F.3d 971, 974-76 (7th Cir. 2013), and would embroil this Court in precisely the sort of entangling inquiry it must avoid, *Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 118 n.4 (3d Cir. 2018).

Plaintiffs then argue that entanglement is permissible here because the Seminary "has willingly entangled itself in government regulation." Opp. 2. As shown above, this argument is as damaging to core religious liberty protections as it is unsupported by the case law. Indeed, it is precisely to avoid making courts and religious groups wade through entangling litigation and discovery that Congress chose in Title IX to exempt religious educational institutions. The exemption permits such institutions to both accept federal funds *and* act consistently with their "religious tenets," 20 U.S.C. § 1681(a)(3).

### III. Imminent Supreme Court guidance similarly favors a stay.

As noted above, the Supreme Court has now decided *Bostock v. Clayton County.*, making that case's outcome irrelevant for purposes of the stay motion. 2020 WL 3146686.[3] Another Supreme Court decision still remains, however, that could provide guidance on this case. In *Our Lady of Guadalupe School v. Morrissey-Berru*, the Supreme Court will opine on the extent to which federal anti-discrimination laws can interfere with a religious school's internal religious decisions over who to employ as its ministers. No. 19-267 (U.S. filed Aug. 28, 2019). Plaintiffs resist *Our Lady*'s relevance largely on its funding argument, Opp. 3, which was rebutted above.

### CONCLUSION

This Court should stay discovery until it resolves the Seminary's motion to dismiss.

---

[3] While *Bostock* did not resolve whether Title IX covers sexual orientation claims, it did note that defenses akin to the Seminary's may bar such claims. *Id.* at *17 (noting that "Congress included an express statutory exception for religious organizations," that the "First Amendment can bar the application of employment discrimination laws" to a religious group's minsters, and "RFRA operates as a kind of super statute" that "displace[s] the normal operation of other federal laws").

8

| | | |
|---|---|---|
| 1 | Dated: June 16, 2020 | Respectfully submitted, |
| 2 | /s/ Kevin S. Wattles | /s/ Daniel H. Blomberg |
| 3 | KEVIN S. WATTLES | DANIEL H. BLOMBERG |
| | SOLTMAN, LEVITT, FLAHERTY & | ERIC S. BAXTER |
| 4 | WATTLES LLP | DIANA M. VERM |
| 5 | 90 E. Thousand Oaks Boulevard, Suite 300 | PETER M. TORSTENSEN, JR. |
| 6 | | JACOB M. COATE |
| | Thousand Oaks, California 91360 | THE BECKET FUND FOR RELIGIOUS |
| 7 | Telephone: (805) 497-7706 | LIBERTY |
| 8 | Fax: (805) 497-1147 | 1200 New Hampshire Ave. NW, Suite 700 |
| | kwattles@slfesq.com | Washington, DC 20036 |
| 9 | | Telephone: (202) 955-0095 |
| 10 | | Fax: (202) 955-0090 |
| | | dblomberg@becketlaw.com |

*Attorneys for Defendants*